# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

**LEONEL MIRANDA MARTINEZ**                                            **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 5:13CV-P182-R**

**STEVE HILAND (DOCTOR)** *et al.*                                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Leonel Miranda Martinez, a convicted prisoner incarcerated at the Kentucky State Penitentiary (KSP), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1).

Thereafter, Plaintiff filed three letters with attachments (medical records and grievances) (DNs 6, 7, and 9) pertaining to the allegations in the original complaint. The Court construes these letters as motions to amend the complaint under Fed. R. Civ. P. 15(a). Upon consideration, the motions to amend (DNs 6, 7, and 9) are **GRANTED**.

Plaintiff also filed another letter with grievances attached (DN 10) and a lone grievance (DN 11). These documents pertain to incidents which have occurred since the filing of the complaint. Therein, Plaintiff complains of being denied blood pressure medication on a recurring basis and of an incident where he was handcuffed "to the bars" while someone was holding a taser in his face while he was on the phone with the grievance aide. He also claims that these incidents occurred "to silence" him. The Court construes these filings (DNs 10 & 11) as motions to supplement the complaint. Because the "supplements" fail to identify who did what and indicate what relief Plaintiff requests, the motions to supplement (DNs 10 & 11) are **DENIED without prejudice to refiling a supplemental complaint on a court-approved form within 30 days from the entry date of this Memorandum Opinion and Order**. The **Clerk of**

**Court is DIRECTED to send Plaintiff a § 1983 form** with the instant case number written in the caption for his use should he choose to supplement the complaint.

This matter is now before the Court on initial review of the complaint (DN 1) and its amendments (DNs 6, 7, and 9) pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will allow a portion of the claims to proceed.

## I. SUMMARY OF FACTS AND CLAIMS

Plaintiff brings this civil-rights action against KSP Dr. Steve Hiland; KSP Warden Randy White; Dr. Scott Haas, "Doctor (superviser) at correct care integrated Health in"; and the Kentucky Board of Medical Licensure. He sues Defendants Dr. Hiland, Warden White, and Dr. Haas in their individual capacities.

In the complaint and amendments,[1] Plaintiff alleges that Dr. Hiland deliberately ignored his medical complaints for back and ear problems. As to the back problem, he states that in 2009, while incarcerated in another facility, he was diagnosed with a "bulging Disk and given naproxyn for pain as well as a tens unit to suffice pain in my nerves." He contends that upon transfer to KSP in 2010, Dr. Hiland "discontinued my tens unit usage without any other form of treatment except naproxyn for pain at $3.00 every month renewal. Now as of the beginning of 2013 doctor Hiland has deliberately written prescriptions to last fourteen days allowing a charge of $3.00 per renewal."

With respect to the ear problem, Plaintiff alleges that for over four years he has had "severe chronic pain in my ears and loud noise. Ears press. increase My heart rate." He states that in 2009, a doctor or nurse practitioner at Northpoint Training Center, where Plaintiff was

---

[1]The facts and claims are taken from the original complaint (DN 1) unless otherwise noted.

housed at the time, recommended he be evaluated by an Ear Nose and Throat [ENT] Specialist due to left ear pressure and tinnitus (DNs 1 & 9). Plaintiff provides documentation in amendments showing that CorrectCare approved the ENT consult due to left ear pressure; that an appointment was scheduled for May 25, 2010; but that he was transferred to KSP on April 22, 2010, and the appointment never occurred (DNs 6 & 9). He contends that the "pain and noise became worst Im losing my hearing" and that Dr. Hiland is refusing him access to medical treatment or evaluation by a specialist (DN 1).

In an amendment (DN 7), Plaintiff additionally claims that he has been charged for treatment that he did not receive on a couple of occasions. First, he alleges that he has been "sick with fever and headache Doctor Hiland refused me a medical treatment and charged me for it." *Id.* Second, Plaintiff alleges that Dr. Hiland "had charged me and he had refuse to refilled my medication" and alleges Warden White and "D.O.C." (presumably, the Department of Corrections) called this particular circumstance "non emergency medical treatment." *Id.* An attached response by Warden White to a grievance clarifies this issue somewhat. Therein, Warden White responded that "NSA John Wood advised this office that you saw the doctor on 8/6/13 during segregation rounds and requested your medication to be refilled; however, following Dr. Hiland's exam he did not grant your medication request." *Id.* Warden White continued, "Therefore, I find that the $3.00 co-payment for non-emergency medical treatment to be compliant with CPP 13.2 . . . . Although, your medication refill request was denied you still owe payment for the doctor visit in accordance with policy." *Id.*

With respect to the claims of denied medical treatment, Plaintiff alleges that he has been subjected to cruel and unusual punishment and further alleges "negligance perpetrated by, Doctor Steve Hiland, and supervised by, Doctor Scott Haas" (DNs 1 & 9). Plaintiff states that

Dr. Haas has been given adequate time to investigate and respond to allegations against Dr. Hiland "leading me to believe he is a coconspitator" to Dr. Hiland's actions.

Plaintiff further alleges claims of retaliation and discrimination. He states that since he filed a grievance in September 2013, Dr. Hiland has "delibertly caused me to suffer from excruciating pain by all together discontinued medicinal remedies for pain causing me to be subjected to cruel and unusual punishment leading me to believe he is discriminating due to my race$^2$ . . . ." He also states that Dr. Hiland "is been racist and unprofessinal Im sufferin permanent hearing loss and he only care for any one but white inmates."

As to the warden, Plaintiff states that Warden White has been "persistantly ignoring exhaustion of remedies." Additionally, he contends that Warden White "wantonly allowed a discriminative and negligant Doctor (one Steve Hiland) to maintain gainful employment and continuously violate my Fourteenth and Eigh Amendments making him an accessory not only to violation of said rights but negligence also."

Plaintiff claims that the Kentucky Board of Licensure violated the Fourteenth Amendment by "negligently" failing to respond to a grievance filed against Drs. Hiland and Haas. He maintains that the Board was given adequate time to respond but failed to do so "leading me to believe it was discriminatory."

As relief, Plaintiff seeks monetary damages and an injunction revoking Defendant Dr. Hiland's and Dr. Haas's medical licenses. In an amendment, Plaintiff further requests that he been seen by a specialist (DN 9).

---

2 Although Plaintiff does not indicate his race in the complaint or its amendments, he does reference another case that he has filed in this Court. *See* 5:13CV-53-R. In the complaint in that case, Plaintiff identifies himself as Hispanic.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the Court must review the complaint and dismiss the complaint, or any portion of the complaint, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

#### A. Federal 42 U.S.C. § 1983 Claims

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

*1. Dr. Hiland*

*a. Eighth Amendment Claims Regarding Medical Care*

In the context of a § 1983 claim for inadequate medical care, prison officials and employees violate a prisoner's civil rights under the Eighth Amendment if they are deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). "An Eighth Amendment claim has two components, one objective and one subjective." *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001).

To satisfy the objective component, "'the inmate [must] show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 896 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[T]he evidence need only show that 'the medical need at issue is sufficiently serious.'" *Blackmore*, 390 F.3d at 896 (quoting *Farmer*, 511 U.S. at 834). To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock*, 273 F.3d at 702-03.

*i. Claims related to Plaintiff's back and ear problems*

Upon consideration, the Court will allow Plaintiff's Eighth Amendment claims of denied treatment for his back condition and his ear pain and tinnitus to continue.

*ii. Claims regarding prescription and doctor co-pays*

A violation of the Eighth Amendment only occurs if the prison or jail conditions the right to receive necessary care or necessities on the payment of such fees. *See Reynolds v. Wagner*, 128 F.3d 166, 173-174 (3d Cir. 1997); *White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th

Cir. 2004) ("It is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay.").

Plaintiff does not allege that he has been denied treatment because of his inability to pay. Instead, Plaintiff first complains that instead of paying a $3.00 co-pay for "naproxyn" once a month, he had to pay a $3.00 co-pay every fourteen days. He does not allege that he was denied treatment or otherwise allege a physical injury necessary to state an Eighth Amendment claim. Therefore, this claim will be dismissed.

Second, Plaintiff claims that Dr. Hiland "had charged me and he had refuse to refilled my medication" and alleges that Warden White and the D.O.C. called this particular circumstance "non emergency medical treatment." In an attached response to a grievance related to this claim, Warden White advised that "NSA John Wood advised this office that you saw the doctor on 8/6/13 during segregation rounds and requested your medication to be refilled; however, following Dr. Hiland's exam he did not grant your medication request." Warden White continued, "Therefore, I find that the $3.00 co-payment for non-emergency medical treatment to be compliant with CPP 13.2 . . . . Although, your medication refill request was denied you still owe payment for the doctor visit in accordance with policy . . . . I do not recommend any reimbursement for your claim." The filings show that Plaintiff actually was seen by Dr. Hiland; Plaintiff just seeks reimbursement of $3.00 taken from his account because Dr. Hiland did not give Plaintiff the treatment (medication) Plaintiff desired. Because Plaintiff was not denied treatment because he could not pay the $3.00 co-pay, no Eighth Amendment violation occurred.

Finally, Plaintiff also states that he was "sick with fever and headache Doctor Hiland refused me a medical treatment and charged me for it." He provides no other facts surrounding this claim. It is unclear whether this is a circumstance like above when Plaintiff was actually

8

seen by Dr. Hiland but did not receive a prescription. Nevertheless, considering the claim in a light most favorable to Plaintiff that he was not seen by a physician but charged for it, Plaintiff does not allege that he was denied treatment for failure to pay and does not allege any resultant harm from this isolated failure to be seen for fever and a headache. Consequently, he fails to state an Eighth Amendment claim.

For the foregoing reasons, the Eighth Amendment claims regarding prescription and medical co-pays will be dismissed for failure to state a claim upon which relief may be granted.

### *b. Retaliation*

Plaintiff claims that Dr. Hiland discontinued his "naproxyn" after Plaintiff filed a grievance against Dr. Hiland. The Court will allow this retaliation claim to proceed.

### *c. Equal Protection*

In reading the complaint in a light most favorable to the unrepresented Plaintiff, the Court concludes that Plaintiff sufficiently claims that he is being denied medical treatment based on his race by Dr. Hiland. The Court will allow this equal protection claim to continue.

### *2. Warden White and Dr. Haas*

To the extent Plaintiff seeks to hold Warden White and Dr. Haas liable based on their supervisory positions, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) ("In order for supervisory liability to attach, a plaintiff must prove that the official

'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). "[S]imple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).

Plaintiff fails to allege that either Warden White or Dr. Haas was directly involved in any of the alleged wrongdoing. Although Plaintiff states that Warden White denied his grievance(s), Plaintiff's claims are against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See, e.g.*, *Shehee*, 199 F.3d at 300 (reversing denial of summary judgment to prison officials whose only involvement was the denial of administrative remedies).

Finally, to the extent Plaintiff is trying to allege a conspiracy among Dr. Hiland, Dr. Haas, and Warden White, the claimed conspiracy is wholly broad and conclusory and lacks the specificity needed to make out a cognizable claim. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.").

The Court, therefore, will dismiss the individual-capacity claims against Warden White and Dr. Haas for failure to state a claim upon which relief can be granted.

### *3. Kentucky Board of Medical Licensure*

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Supreme Court has also "made clear that the sovereign immunity of the states . . . extends to actions brought against a state by its own citizens." *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (quoting *S.J. v. Hamilton Cnty., Ohio*, 374 F.3d 416, 419 (6th Cir. 2004)). The Sixth Circuit has opined that "[a] state is sovereign within the structure of the federal system, and 'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). Moreover, "[s]overeign immunity applies not only to the states themselves, but also to 'state instrumentalities,'" *S.J. v. Hamilton Cnty., Ohio*, 374 F.3d at 419 (quoting *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997)), and regardless of the relief sought. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

There are essentially three exceptions to the rule cited above: (1) when the state consents to suit; (2) when Congress has abrogated a state's sovereign immunity; and (3) when under the fiction created by *Ex parte Young*, 209 U.S. 123 (1908), a litigant seeks "an injunction ordering prospective relief against a state official in order to prevent future constitutional violations." *See Barton*, 293 F.3d at 948; *Puerto Rico Aqueduct and Sewer Auth.*, 506 U.S. at 146 (advising that *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought"). None of these exceptions exist in this case.

The Kentucky Board of Medical Licensure is a Kentucky agency created by Ky. Rev. Stat. Ann. § 311.530 ("There is hereby created in state government an independent board to be known as the State Board of Medical Licensure which shall exercise all medical and osteopathic licensure functions heretofore exercised by the State Board of Health."). The Kentucky Board of Medical Licensure is, therefore, entitled to sovereign immunity under the Eleventh Amendment. *See Fairley v. Louisiana*, 254 F. App'x 275, 277 (5th Cir. 2007) ("The Eleventh Amendment therefore bars the relief sought against the Board [of Medical Examiners] and the State of Louisiana."); *Emory v. Texas State Bd. of Med. Exam'rs*, 748 F.2d 1023, 1025 (5th Cir. 1984) ("[T]he eleventh amendment bars all relief sought against the Board."); *Tobias v. Arizona Bd. of Med. Exam'rs*, No. 98-16459, 1999 WL 510951, at *1 (9th Cir. July 15, 1999) (finding, in an action against the Medical Board of California and the Arizona Board of Medical Examiners for denying an application for licensure, that district court properly dismissed action on Eleventh Amendment grounds).

The claims against the Kentucky Board of Medical Licensure will, therefore, be dismissed.

### B. *State-Law Claims*

The Court concludes that Plaintiff alleges a state-law negligence claim against Defendant Hiland (DNs 1 & 9), a state-law negligent retention claim against Defendant White (DN 1), and a state-law negligent supervision claim against Defendant Haas (DN 9). The Court will allow these claims to proceed as well.

## IV. ORDER

For the reasons above, and being otherwise sufficiently advised,

**IT ORDERED** that the federal § 1983 claims regarding prescription and doctor co-pays against Dr. Hiland are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that the federal § 1983 claims against Warden White and Dr. Haas are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that the federal § 1983 claims against the Kentucky Board of Medical Licensure are **DISMISSED** as barred by the Eleventh Amendment. As no claims remain against this Defendant, the **Clerk of Court is DIRECTED to terminate the Kentucky Board of Medical Licensure** as a party to this action.

**IT IS FURTHER ORDERED that the federal § 1983 claims against Dr. Hiland for denied medical treatment for Plaintiff's back and ear conditions, for retaliation, and for discrimination based on race shall continue past initial screening and that the state-law claims against Dr. Hiland, Warden White, and Dr. Haas also shall continue past initial screening**. In permitting these claims to proceed, the Court passes no judgment on their merits or the ultimate outcome of the action. The Court will enter a separate Scheduling Order governing the development of the continuing claims.

Date:

cc: Plaintiff, *pro se*
　　Defendants
　　General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.005

13